Glidewell *v.* Spaugh.

*F. T. Hord,* for appellant.

———◆———

## GLIDEWELL *v.* SPAUGH.

SHERIFF'S SALE.—EVIDENCE.—The introduction in evidence of the record of the judgment only, without a transcript of the record of the proceedings in the case, showing jurisdiction in the court rendering the judgment and that the judgment itself was within the relief sought, is not a sufficient showing of title in the purchaser at a sheriff's sale under the judgment.

TRUSTS.—Where a conveyance of real estate is made to one and the consideration therefor is paid by another, a trust does not result, under the statute, unless there be an agreement, without fraud, to hold the title for the use of the person paying the purchase money.

LIEN OF JUDGMENT.—INNOCENT PURCHASER.—Where lands are sold upon a judgment against a party who has only a naked legal title, and the person holding the equitable title is in possession at the time, such possession is constructive notice to the purchaser.

APPEAL from the *Bartholomew* Circuit Court.

RAY, J.—This was an action of ejectment, in the court below, wherein the appellee, *Spaugh,* sought to recover of the appellant, *Glidewell,* lot number two in the town of *Hope,* in *Bartholomew* county. The appellant answered by a

general denial. There was a trial, which resulted in a finding and judgment for the appellee. A motion for a new trial was overruled.

It is urged that the court erred in refusing to permit the appellant to prove, as matter of defense, the following facts: That the property in question was purchased on the 13th day of *April,* 1861, of *Frederick Douner,* the owner thereof, by *Woehler,* for said *Glidewell,* under an express contract and agreement between *Glidewell* and *Woehler* that said property was to be so purchased for the sole use and benefit of *Glidewell,* and that *Woehler,* under said contract and agreement, was to take the deed of conveyance in his own name; that the deed was so taken, *April* 16, 1861, but in trust and for the sole use and benefit of *Glidewell;* that *Woehler* was also to give his notes for the purchase money of the said property, with *Joseph D. Sidner* as surety thereon; that by the agreement *Woehler* was, after securing the conveyance from *Douner* for said property, to convey the same to *Glidewell,* and was not to pay any part of the purchase money, but that *Glidewell* or the surety, *Sidner,* was to pay the same, and that *Woehler* was at the time of the agreement and purchase of said property, and has been ever since that time, wholly and notoriously insolvent; that the arrangement was so made and entered into by and between *Glidewell* and *Woehler* for the reason that *Douner* refused to sell said property to *Glidewell,* and said plan was resorted to for the purpose of getting said property for *Glidewell* from *Douner;* that under the arrangement *Woehler* did purchase the property from *Douner,* and took the deed of conveyance in his own name, and executed his notes therefor with *Sidner* as surety thereon, and that *Glidewell* did, in pursuance of the agreement, immediately upon *Woehler's* receiving the conveyance therefor, enter into the possession and occupancy of the premises, and that he still occupied the same; and that *Woehler,* after having received the conveyance for said property from *Douner,* on the 16th day of *June,* 1861, in pursuance of the

agreement, conveyed the same to *Glidewell* by deed, who still holds the same by virtue of said arrangement and the purchase from *Douner* and the deed from *Woehler* to himself, and that *Woehler* never had any other right or interest in or to said property than that acquired by and under this arrangement, and that said contract was made and entered into and consummated by and between *Woehler* and *Glidewell* without any fraudulent intent on the part of either or both; that *Joseph D. Sidner*, the surety on the notes of *Woehler* to *Douner* for the purchase money of said real estate, had fully paid off and discharged the notes, and that *Sidner* had released all right of action against *Woehler* on account of his having paid off said notes as such surety.

The appellee objected to the introduction of this evidence, and the court sustained the objection, and refused to permit the appellant to prove said facts.

The appellee introduced in evidence the record of a judgment in favor of one *Carter*, administrator of the estate of *John Lindsey*, deceased, and against *William C. Woehler* and the appellee, *Woehler* being principal and *Spaugh* surety, rendered *April* —, 1861. No other portion of the record and none of the papers in the suit in which the judgment was had were introduced, except the execution, with an indorsement thereon requiring the sheriff to exhaust the property of *Woehler* before proceeding against the property of the appellee. The return upon the execution recited the levy upon the property in question, and the sale thereof on the 15th of *March*, 1862, to the appellee for $5. The sheriff's deed to the appellee was also given in evidence. A witness testified that *Glidewell* took possession of the property on the 17th day of *April*, 1861, and had since retained possession, and that the yearly rental value was $48. This was all the evidence.

There was a motion for a new trial on the ground that the finding was not sustained by the evidence, and for error of the court in excluding the evidence offered by appellant.

The court should have granted the motion.    The introduction of the judgment against *Woehler*, without a transcript of the record of the proceedings, showing jurisdiction in the court rendering the judgment, and that the judgment itself was within the relief sought, was not a sufficient showing of title in the appellee under the sheriff's sale. *Cline* v. *Gibson*, 23 Ind. 11.

Was the action of the court, excluding the evidence offered by the appellant, erroneous?    The first section of "an act concerning trusts and powers," (1 G. & H. 651,) provides that "no trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney, thereto lawfully authorized in writing."

The sixth section of the act declares that "when a conveyance for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."    One of those provisions, or rather exceptions named to the rule, is the case made by the evidence offered, to-wit: "Where it shall be made to appear that by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase money, or some part thereof." Without the statute, the trust would be implied without proof of the agreement to hold in trust, but under the statute, the trust does not result, unless the express agreement to thus hold be superadded.

The evidence also showed that the appellee was a party to the judgment under which the sale was made, which he insists invested him with the title to the land in suit. That judgment did not, in equity, reach the naked legal title held by his co-execution debtor, and the fact that immediately upon the conveyance of the property to

Glidewell *v.* Spaugh.

*Woehler*, the appellant entered into possession of the same, and continued to hold that possession at the date of the sheriff's sale, was constructive notice to the appellee of *Glidewell's* rights, and put him upon inquiry, and he was not therefore an innocent purchaser, and as such to be protected. Hill on Trustees, p. 512; *Ells* v. *Tousley*, 1 Paige's Ch. R. 279; In Re Howe, *id.* 124.

The superiority of the equitable title to a judgment lien is recognized in the opinion delivered in *Dwight* v. *Newell*, 3 Comstock 185, where the judgment creditor had no notice of the equity. The rule was stated by Lord ELDON that "a plea of a purchaser for a valuable consideration without notice, must always contain an averment that the vendor was in possession." *Wallwyn* v. *Lee*, 9 Ves. 24. Chancellor WAL-WORTH, remarks, in *Keirsted* v. *Avery*, 4 Paige Ch. 9, that "It is now settled that a judgment lien, being merely a general lien on the land of the debtor, is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the docketing of the judgment. And the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate."

The evidence offered should have been admitted, as it constituted a defense to the action.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*Herod & Herod* and *F. T. Hord*, for appellant.