No. 7326.

THE MONTICELLO HYDRAULIC CO. ET AL. *v.* LOUGHRY ET AL.

JUDGMENT LIEN.—*Existing Equities.—Injunction.*—The general lien of a judgment creditor upon the lands of his debtor is subject to all equities which existed against such lands in favor of third persons at the time of the recovery of the judgment; and courts will, by injunction, protect the prior equitable interests of such persons against an attempted enforcement of the judgment creditor's lien by execution and sale.

EQUITABLE LIEN.—*May be Created by Agreement.*—An equitable lien for the purpose of securing the payment of money, may be created in favor of one person upon the land of another by express agreement, which may be enforced in equity, although not in form a legal mortgage. Such an agreement raises a trust which binds the estate to which it relates, and all who take title thereto with notice of such trust can be compelled in equity to fulfil it.

WATER WORKS CO.—*Assignment of Water Rents to pay for Repairs to Dam, etc.—Judgment.—Injunction.—Pleading.*—Where a water works company, in consideration of the repair of its dam, etc., assigned its water rents to a lessee, and after the commencement of such repairs a

·creditor of the company recovered a judgment, as to the sufficiency of a complaint by said lessee to enjoin the sale on such judgment of the company's land and water power, see opinion.

From the White Circuit Court.

*A. W. Reynolds* and *E. W. Sellers*, for appellants.

*R. Gregory, J. H. Matlock,* —— *Owens, R. C. Gregory* and *W. B. Gregory*, for appellees.

WOODS, J.—The only question brought to our attention is whether the complaint is good on a demurrer for want of facts. The following are the material averments :

The Monticello Hydraulic Company was organized under an act which provided for its incorporation under that name, approved February 12th, 1848, and was empowered to construct a dam across the Tippecanoe river above and within one and one-half miles of Monticello, and to purchase and hold real estate, etc. ; that said company did accordingly become, and is now, the owner in fee, and in the rightful possession, of the following described real estate adjoining said river : Here a particular description of lands on either side of the river is given, and then follow allegations showing the execution by the company of leases of parcels of land to certain lessees named, including the appellees ; and, in connection with each lease of land, the lease of a certain stated number of cubic feet of water to be drawn per minute by the respective lessees from the races of said company, for hydraulic purposes, in consideration of which leases the respective lessees each agreed and undertook to pay said company a stipulated annual rent, payable quarterly. These leases were for the period of ten years from date, and executed in 1874–5–6 ; that made to the appellees bearing date May 5th, 1875 ; and all were duly acknowledged and recorded. The company expressly undertook in their lease to appellees to keep their dam in repair. That on the 23d day of March, 1875, a large part of said company's dam was washed away, thereby rendering the mills and other property of said lessees

of little value ; that at the time of said accident the plaintiffs owned the Monticello flouring mills, worth fifteen thousand dollars, but which were rendered by said accident of little or no value ; that said company, having no means other than said water rents with which to rebuild said dam, entered into a written contract with the plaintiffs, in pursuance of an order therefor duly made and entered on the books of said corporation, authorizing the president of the company to make the same, whereby it was agreed between the plaintiffs and said company that the appellees should repair said dam at their own expense and render an account thereof to the company, and should have the right to collect all rents due, and to become due, from said lessees, and to retain their own rents, to become due under their lease, until such time as their receipts from the aforesaid sources should equal the sum of their said expenditures and interest thereon at ten per cent. per annum, and that to that end said leases should be assigned to the appellees by said company ; that, accordingly, said company did execute to the appellees, on said 5th day of May, 1875, a written assignment of "all the rights of said company to collect the water rents accruing to said company under and by virtue of certain leases of water rents and grounds, executed by the said company," etc., (describing the leases), for the term of six years ; that, by virtue of said assignment and said contract, the appellees were vested with the right to receive and retain said water rents ; and, relying on their said contract and assignment, they did commence the rebuilding of said dam, and the expenditure of their own money therein, long before the rendition of the judgment hereinafter set forth, and during the summer and fall of 1875 did complete the repair of said dam, expending thereon the sum of $6,314.75 of their own money, and on the 13th of May, 1876, presented a detailed account thereof to said company, which the company duly approved by an order of record, and allowed interest thereon

from July 1st, 1875, making the total sum due the appellees $6,653.23; that on the 29th day of May, 1875, after the plaintiffs had commenced repairing the dam, under said contract, James C. Reynolds, in the White Circuit Court, recovered against said Hydraulic Company a judgment for $3,319.24 and costs of suit, which judgment said Reynolds, on the 6th day of August, 1876, duly assigned to the defendant Clark, who has issued, or is about to issue, execution thereon, and threatens to have the same levied on said real estate and water power of said company, and gives out and pretends that said judgment has priority over the said claim of the plaintiffs, under their said contract and assignment, and, unless restrained by an order of this court, will sell said real estate and water power on execution, disregarding the equitable lien of the plaintiffs, and will harass and annoy the plaintiffs and said tenants by litigation growing out of said pretended priority; that plaintiffs will thereby have a cloud over their said right to an equitable lien on said water rents and leases, and will be greatly hindered in the collection of the rents due and to become due from said leases.

Wherefore the plaintiffs pray that said Clark be enjoined from claiming any rights in or to said rents upon said leases, until the said claim of the plaintiffs is fully paid, and that the defendant's said lessees be enjoined to pay said rents to the plaintiffs for six years, or until their claim is satisfied.

Issues of fact, trial and judgment for plaintiffs as prayed.

This complaint is good, at least as against any objection pointed out, if it shows in favor of the appellees any lien upon or interest in the real estate levied upon, such as warranted or required the interposition of the court for the enforcement or protection thereof against the threatened sale on execution.

It is well settled that "the general lien of a judgment

creditor, upon the lands of his debtor, is subject to all equities which existed against such lands, in favor of third persons, at the time of the recovery of the judgment. And the court of chancery will so control the legal lien, of the judgment-creditor, as to restrict it to the actual interest of the judgment debtor in the property; so as fully to protect the rights of those who have a prior equitable interest in such property, or in the proceeds thereof." *Buchan* v. *Sumner*, 2 Barb. Ch. 165. *Peet* v. *Beers*, 4 Ind. 46; *Troost* v. *Davis*, 31 Ind. 34; *In the matter of Howe*, 1 Paige, 125; *White* v. *Carpenter*, 2 Paige, 217; *Keirsted* v. *Avery*, 4 Paige, 9; *Glidewell* v. *Spaugh*, 26 Ind. 319.

"There may be an equitable lien created in favor of one, upon the real estate of another, by express agreement, for the purpose of creating a charge upon the same, for securing the payment of money, although not in form a legal mortgage, and which can only be enforced in equity. Such an agreement raises a trust which binds the estate to which it relates, and all who take title thereto, with notice of such trust, can be compelled in equity to fulfil it." 2 Washb. Real Prop., 4th ed., 42. *Pinch* v. *Anthony*, 8 Allen, 536; *Delaire* v. *Keenan*, 3 Des. 74; *Daggett* v. *Rankin*, 31 Cal. 321; *Wharton* v. *Wilson*, 60 Ind. 591; cases cited, *supra*.

By the contract and assignments made in pursuance thereof, as set forth in the complaint, the plaintiffs became entitled to retain the rents which should become due from themselves to said company by the terms of their lease for six years, if necessary, to repay them the amount of their expenditures in repairing the dam. The substantial effect of this is that they held their own lease of ground and water power for that period, with the rent actually paid in advance, though by the face of the lease, as recorded, the rent was payable quarterly each year. The other leases mentioned in the complaint were assigned to the plaintiffs for the same, time and purpose, and so the rents payable thereon became

payable to the plaintiffs instead of the company. The appellant was about to proceed to a sale of the property on execution to satisfy his judgment, which he gave out and pretended had priority over the rights and claim of the plaintiffs. It was therefore eminently proper that the respective rights of the parties should be determined before a sale. The complaint was sufficient for that purpose, and, if true, entitled the plaintiffs to relief.

Judgment affirmed, with costs.